UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Valerie Torres and Derreck Becerra,<br><br>Plaintiffs<br><br>-against-<br><br>The City of New York; New York City Police Captain Peter Simonetti, New York City Police Officer Thomas M. DeLacy, New York City Police Officers John Does 1 through 9 and New York City Police Officer Jane Doe,<br><br>Defendants | 07 CIV 8482 (GBD)<br><br>ECF CASE<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL |

**PRELIMINARY STATEMENT**

1.      This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §1983 for the Defendants' commissions of acts under color of law in violation of the Plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

2.      On the evening of July 4, 2006, members of New York City Police Department, including the Commanding Officer of the 72nd Precinct, entered and searched Plaintiffs' home without a warrant and violently seized and arrested them. Plaintiffs were held in police custody until the next morning. All charges against them were eventually dismissed. Among the abuses which the Plaintiffs witnessed and to which they were subjected, Plaintiff Torres was subjected to a strip and visual body cavity search.

## JURISDICTION

3. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

4. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (3) and (4).

## VENUE

5. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c) in that, *inter alia*, Defendant City of New York "resides" in the Southern District of New York, insofar as it is therein subject to personal jurisdiction.

## JURY DEMAND

6. The Plaintiffs demand trial by jury on each and every one of their claims as pled herein.

## PARTIES

7. Plaintiff VALERIE TORRES is a resident of New York City and is the mother of Plaintiff Derreck Becerra. She is now and was at the time of the events that gave rise to this claim employed by Aramark Corporation in Brooklyn.

8. Plaintiff DERRECK BECERRA is a resident of New York City and is the 18-year-old son of Plaintiff Valerie Torres.

9. Defendant CITY OF NEW YORK ("City") is a municipal corporation within the State of New York.

10. Defendant NEW YORK CITY POLICE DEPARTMENT (the "NYPD") is the

department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

11.     Defendant NYPD CAPTAIN PETER SIMONETTI is a police officer is employed by the NYPD and at all relevant times herein was acting in the capacity of agent, servant, and employee of the City. According to the information provided on the NYPD's website, Defendant Simonetti is the Commanding Officer of the 72nd Precinct. Defendant Simonetti is sued individually and in his official capacity.

12.     Defendant NYPD OFFICER THOMAS M. DELACY, shield number 13755, is a police officer is employed by the NYPD and at all relevant times herein was acting in the capacity of agent, servant, and employee of the City. Defendant DeLacy is sued individually and in his official capacity.

13.     Defendants JOHN DOES 1 through 9 and Defendant JANE DOE are unidentified police officers employed by the NYPD who at all relevant times herein were each acting in the capacity of agent, servant, and employee of the City. Plaintiff is unable

to determine the names of these NYPD officers at this time and thus sues them under fictitious designations. Defendant John and Jane Does are sued in their individual and official capacities.

14. John Doe 1's shield number is 1570.

15. John Doe 2's shield number is 3709.

16. Upon information and belief, at all times relevant herein, each individual defendant was assigned to the 72nd Precinct.

17. Upon information and belief, each individual defendant is still a member of the NYPD.

18. At all times relevant herein, each individual defendant was acting under color of state law in the course and scope of his duties and functions as an agent, servant, employee and officer of the City and otherwise performed and engaged in conduct incidental to the performance of his lawful functions in the course of his duties. The individual defendants were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

## STATEMENT OF FACTS

19. On the evening of July 4, 2006, Ms. Torres was enjoying a Fourth of July cookout with friends and neighbors outside of her home at 665 49th Street, Brooklyn, New York.

20. 665 49th Street is a two-family home in which Ms. Torres rents the apartment on the second floor. She lives there with her son, Derrick, and her daughter, Ashley Perez, who at the time of the events giving rise to this claim was 10 years old.

21. John Doe 1 approached Ms. Torres along with other officers and asked her who lived there. Ms. Torres responded that she did.

22. One of the officers attempted to open the door to 665 49th Street, but it was locked.

23. Capt. Simonetti then yelled at Ms. Torres to "Open the fucking door," at which point Ms. Torres, who was wearing a mini skirt without pockets, indicated that she did not have her keys on her person.

24. One of the officers called Ms. Torres, who is Hispanic, a "spic" in the presence of the other officers and her friends and neighbors.

25. At the direction of Capt. Simonetti, John Doe 1 kicked down the front door after which at least 6 other police officers, John Does 2 through 7, ran though the doorway and up the stairs of Ms. Torres' building.

26. Some of these officers entered Ms. Torres apartment.

27. Each of the rooms in Ms. Torres' apartment was ransacking and her families belongings and personal effects left in disarray.

28. Other officers when up to the roof.

29. None of the officers ever produced a search warrant, and on information and

belief the defendant police officers did not have a warrant to enter and search 665 49th Street or any of the apartments therein.

30. At no point did Ms. Torres, or anyone else, give any of the officers permission to enter, search or remain in her building or her apartment.

31. There was no exigency or emergency situation at the time the defendant officers forcibly entered the building of Ms. Torres' apartment.

32. After asking Capt. Simonetti what he was doing in her home without a warrant, he, John Doe 2 and other officers grabbed Ms. Torres and arrested her.

33. At about this time Derreck, who was then 17 years old, walked inside of the apartment. Officers asked who he was and he said he lived there and that Ms. Torres was his mother.

34. Several officers then grabbed Derreck and roughly threw him up against the wall, cuffed him behind his back and dragged him outside and placed him in a waiting police van.

35. Ms. Torres received bruised as a result of the violent arrest.

36. Ms. Torres, also back-cuffed, was dragged outside after him and placed into the police van.

37. Ms. Torres was brought handcuffed by police to the waiting police vehicle in front of her family members, friends and neighbors. Some of these neighbors still treat her badly as a result, calling her names such as "Gangster Mom."

38. At around the time of the Plaintiffs being brought out to an placed in the police van, Plaintiffs observed other police officers assaulting other people in the area with their hands and night sticks, threatening people with Taser guns and pointing lasers at people who had taken their cameras out.

39. Several other people were arrested and placed in the van with the Plaintiffs.

40. Ms. Torres and Derreck were eventually transported to the 72nd Precinct in Brooklyn.

41. From the time of her arrest onward, Ms. Torres was crying out about her daughter Ashley, telling the police that Ashley was asthmatic and that as a result being arrested she did not know where Ashley was.

42. Ms. Torres continued to express her concern about her daughter at the precinct, repeatedly expressing her desire to make a phone call to see if she was alright.

43. The police did not allow Ms. Torres to make any calls until approximately 4:00 AM the next morning.

44. Shortly after arriving at the 72nd Precinct, Ms. Torres, who was wearing a miniskirt, a tank top and open-toed shoes was asked and to "pat herself down," which she did.

45. Later, while still in custody at the 72nd Precinct, two male officer John Does 8 and 9 told Ms. Torres that she needed to be searched.

46. Ms. Torres stated that she had already been searched.

47.     The officers responded told Ms. Torres that she needed to be searched in the bathroom, to which they escorted her.

48.     Ms. Torres, who was crying at the time, asked John Does 8 and 9 why she was being searched and they told her they were searching her for drugs.

49.     A female officer Jane Doe then directed Ms. Torres to take off her clothes and to drop her underwear, a direction with which Ms. Torres complied.

50.     With her underwear down, Jane Doe directed Ms. Torres to squat and cough, a direction with which Ms. Torres felt forced to comply.

51.     Defendant Jane Doe then directed Ms. Torres to lift her shirt and brazier and to show the officer her breasts, a direction with which Ms. Torres felt forced to comply.

52.     Jane Doe then directed Ms. Torres to feel underneath her breast in a manner that would show that there was nothing hidden under them, a direction with which Ms. Torres felt forced to comply.

53.     While in custody at the 72nd Precinct, the Plaintiffs also witnessed a various police officers verbally and physically attack other detainees which caused Plaintiffs to fear that they might be the next victims of the physical attacks.

54.     The Plaintiffs were finally given Desk Appearance Tickets and released at about 5:00 AM.

55.     According to the Criminal Court complaint filed in Ms. Torres' case, Diana A. Sabater, then a paralegal at the Kings County District Attorney's office stated that on July

4, 2006, at approximately 10:56 PM, according to a supporting deposition of Officer DeLacy he "observed fireworks being ignited on the roof of [665 49th Street] whereupon [he] entered the above location and observed a large quantity of fireworks in the second floor hallway" and that "upon further inspection of the area, [he] observed from the hallway of the above location an apartment door open and [he] observed several boxes of fireworks inside said apartment."

56. On November 20, 2006, the criminal cases against the Plaintiffs were dismissed pursuant to Criminal Procedure Law § 30.30.

57. The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches." Additionally, according to information and documents made available on the Criminal Complaint Review Board's website (www.nyc.gov/ccrb), an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004 (*see* http://www.nyc.gov/html/ccrb/pdf/nypdssdir.pdf ).

58. This notwithstanding, on information and belief, the NYPD has *de facto* policy

and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

## NOTICE OF CLAIM

59. A Notice of Claim was not filed in this matter.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against Individual NYPD Defendants
### (Valerie Torres)

60. All other paragraphs herein are incorporated by reference as though fully set forth.

61. By breaking into and searching her home and in seizing, violently arresting, detaining, strip searching, charging and prosecuting Plaintiff Torres and by verbally harassing her based on her ethnicity, the Defendant NYPD officers engaged under color of law in the violation of her rights the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures, excessive force, false arrest and imprisonment, malicious prosecution and discrimination based on membership in a protected class.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against Individual NYPD Defendants
### (Derreck Becerra)

62. All other paragraphs herein are incorporated by reference as though fully set forth.

63. By violently arresting, detaining, charging and prosecuting Plaintiff Becerra, the Defendant NYPD officers engaged under color of law in the violation of his rights the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to be free from unreasonable searches and seizures, excessive force, false arrest and imprisonment and malicious prosecution.

**THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 Against the City of New York**
**(Plaintiffs Torres and Becerra)**

64. All other paragraphs herein are incorporated by reference as though fully set forth.

65. Municipal liability for the violations of Plaintiffs Torres and Becerra's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

66. At all times material to this complaint, the defendant City, acting through defendant NYPD and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

67. At all times material to this complaint, the defendant City, acting through defendant NYPD and the individual defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. The policies, practices, customs, and usages

were a direct and proximate cause of the unconstitutional conduct alleged herein.

WHEREFORE, the plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to Plaintiffs against the defendants, jointly and severally;

3. Award Plaintiffs reasonable costs, disbursements and attorneys' fees; and

4. Grant any other relief the court deems appropriate.

Dated:  New York, New York
           September 30, 2007

Respectfully submitted,

Darius Wadia, L.L.C.

/s/
_____
By:  Darius Wadia, Bar number DW8679
Attorney for Plaintiff
233 Broadway, Suite 2208
New York, New York  10279
dwadia@wadialaw.com

TO:

New York City
Corporation Counsel Office
100 Church Street, 4th floor
New York, NY  10007

Captain Peter Simonetti
Commanding Officer
71st Precinct
830 4th Avenue
Brooklyn, New York 11232

Police Officer Thomas M. DeLacy
71st Precinct
830 4th Avenue
Brooklyn, New York 11232